𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

ROUZIE v. DAINGERFIELD.

JANUARY 18, 1900.

Absent, Cardwell, J.

1. CONTRACTS—*Fraud in Procurement—Election—How Made—Promptness.*—A contract procured by fraud is voidable at the election of the party defrauded. The election may be by word or deed, but once made it is final. If he elect to rescind he must do so promptly on discovery of the fraud, or else he will be held to have waived the right.

Appeal from three decrees of the Circuit Court of Essex county, pronounced, respectively, September 5, 1896; September 2, 1897, and March 7, 1898, in a suit in chancery, wherein the appellee was the complainant, and the appellant and another were the defendants.

*Reversed.*

The opinion states the case.

*H. I. Lewis* and *R. H. Bagby*, for the appellant.

*Ware & Carter* and *Thomas E. Blakey*, for the appellee.

RIELY, J., delivered the opinion of the court.

The complainant, George W. Daingerfield, bought of the defendant, William D. Rouzie, his one-half interest in the mercantile firm of R. B. Rouzie & Co., composed of William D. Rouzie and R. B. Rouzie, and agreed to pay therefor the sum

of $600, for which he executed five bonds and secured the same by a deed of trust on his interest in a certain tract of land.

This suit was brought by Daingerfield to cancel his said bonds, annul the deed of trust, and to recover from William D. Rouzie such sums of money as the complainant had paid in settlement of debts of the firm of R. B. Rouzie & Co., which were outstanding at the time he bought the interest of William D. Rouzie, upon the ground that he was induced to make the purchase by misrepresentation and fraud.

The bill charges that it was represented unto the complainant at the time of the purchase that the business of the firm was profitable and its condition solvent; that the stock of goods then on hand was worth $900, and that there were solvent accounts due to the firm to the amount of $250, which made an aggregate of assets of $1,150, while the liabilities amounted only to $500; and that it turned out that the firm owed in fact $1,500, while the assets were worth only $800. It may be observed just here that while the complainant agreed to pay $600 for the half interest of William D. Rouzie, it was only worth at the time of the purchase, according to the statements of the bill, the sum of $325, exclusive of whatever may have been the value of the good will.

It appears from the evidence that the purchase of the interest of William D. Rouzie was consummated on October 26, 1892; that Daingerfield immediately took the place of William D. Rouzie in the firm; and that he and the other partner, R. B. Rouzie, thereafter carried on the business. He testified that he discovered within thirty days after the purchase that the debts due by the firm were greater in amount than had been represented to him was the case, and that he learned, within two months, the true condition of the firm and its insolvency. He did not, however, on discovering its insolvent condition "call a halt," and offer to rescind the contract, nor make any complaint to his vendor, but continued to treat the purchase as a subsisting and

valid contract. He, together with the other partner, with full knowledge of the fraud which he charges was practiced upon him, actively continued the business for nearly a year after he bought the interest of William D. Rouzie, selling the stock of goods on hand in the usual course of mercantile trade, and replenishing it by the purchase of other goods until August —, 1893, when they made an assignment of all their property, including the stock of merchandise, for the benefit of their creditors.

Although Daingerfield bought the interest of William D. Rouzie in the firm of R. B. Rouzie & Co. on October 26, 1892, as before stated, and although he learned within two months thereafter all the facts of the alleged fraud, he delayed bringing this suit until July rules 1895, more than two years and a half after the discovery of the fraud, and after he and the other partner had parted with the entire stock of goods and other assets.

The evidence fails to establish the charges of misrepresentation and fraud charged in the bill. It is not shown that William D. Rouzie made any statement in regard to the business or condition of the firm that was untrue, and it is not proved that any one else was authorized to make any representation for him. Indeed it does not appear that he was at all informed of the condition of the firm or its business. It had been in existence only about a year, and he had put into it the sum of $800, but he lived fourteen miles away and took no active part in its management, the other member of the firm, R. B. Rouzie, being the managing and active partner.

If, however, it were proved that Daingerfield, in buying the interest of William D. Rouzie, had made not merely a bad bargain, but had been induced to make the purchase by false and fraudulent representations, he would be barred by his conduct of the relief he seeks, for the law is well settled that if a person, who has been induced by fraud to enter into a contract with another, intends to repudiate it, he must, as soon as he learns the truth,

use all reasonable diligence to disaffirm it. If, after discovering the falsity of the representations by which he was misled, he treat the contract as still subsisting and binding, he thereby waives all benefit of relief from the misrepresentation. Whenever a party to a voidable contract has the right to elect whether he will avoid it or treat it as still subsisting, his election may be manifested by acts as well as by words. And if he elect, upon the discovery of the fraud, to affirm the contract, his election is final and conclusive. He cannot afterwards disaffirm it, but must abide by the decision he has made. 2 Pomeroy's Eq. J., sec. 897; Kerr on Fraud and Mistake, pp. 299, 301; *Wilson* v. *Hundley,* 96 Va. 96; *Hurt* v. *Miller,* 95 Va. 32; *Max Meadows L. & I. Co.* v. *Brady,* 92 Va. 71; and *Grymes* v. *Saunders,* 93 U. S. 55.

In the case before us, the evidence is conclusive that Daingerfield, after learning, according to his sworn testimony, that the liabilities of the firm of R. B. Rouzie & Co. were greater and the assets less than he charges they were represented to him, elected to treat the contract of purchase as still subsisting and binding. He made no offer to rescind it, upon the discovery of the alleged fraud, nor complained to William D. Rouzie of any deception, but retained the interest in the firm which he had bought, and, together with the other partner, R. B. Rouzie, held possession of the stock of goods and continued to carry on the business of merchandising, thereby rendering himself less able day by day to restore what he had received under his contract of purchase, if he intended to disaffirm it, until, by the deed of assignment to secure their creditors, they had parted with the entire assets of the firm.

Misrepresentation and fraud, as before stated, constitute the sole foundation for the relief sought; and while the bill does not in terms ask for a rescission of the contract, it is, under the pleadings, only through rescission that the desired relief could be obtained. There is no other ground upon which the complainant could ask that his bonds be cancelled and the deed of trust an-

nulled. Cancellation would follow as an incident of rescission. By his failure to repudiate promptly the contract upon the discovery of the fraud, if indeed there were any fraud, and his election, to be inferred from his acts, to treat the contract as still subsisting and binding, he has precluded himself from rescission and the relief he now seeks.

It follows from what has been said that the decrees appealed from must be reversed, and set aside; and the bill dismissed.

*Reversed.*